UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICKEY MILLER,

    Plaintiff,

 v.                                                          Case No. 14-CV-1603

MICHAEL NINKOVIC, et al.,

    Defendants.

## DECISION AND ORDER DENYING PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Mickey Miller is currently incarcerated at the Racine County Jail. On March 27, 2015, the Honorable J.P. Stadtmueller entered an order allowing Miller to proceed on retaliation, excessive force, and deliberate indifference claims that allegedly arose while he was incarcerated at the Milwaukee County Jail (the "Jail"). (Docket # 12.) The case was reassigned to me on consent of the parties on May 26, 2015.

On September 10, 2015, Miller filed a motion for summary judgment (Docket # 68), and on October 8, 2015, defendants Melinda Andrzejewski and Keltoum Mezraoui filed a cross-motion for summary judgment on the deliberate indifference claims.[1] Both motions are now fully briefed. For the reasons stated below, I deny the parties' cross-motions for summary judgment.

---

[1] The remaining defendants (Michael Ninkovic, Devonta Townes, Jeffrey Andrykowski, Crystalina Montano, Brian Capak, Jacob Gennrich, Derek Spidell, Pedro Ruiz, and Amir Mizdrak) responded to Miller's summary judgment motion but did not file a cross-motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

2

# FACTS[2]

*1. Parties*

Miller was transferred to the Jail from Dodge Correctional Institution on December 5, 2013. (Docket # 106 ¶ 1.) All of the defendants worked at the Jail during the relevant time period: Michael Ninkovic, Devonta Townes, Jeffrey Andrykowski, Crystalina Montano, Brian Capak, Jacob Gennrich,[3] Derek Spidell, Pedro Ruiz, and Amir Mizdrak were correctional officers; Melinda Andrzejewski was a psychiatric social worker; and Keltoum Mezraoui was a licensed practical nurse. (Docket # 1 ¶¶ 1-14; Docket # 98 ¶¶ 1-2)

*2. Miller's Version of the Events*

On December 5, 2013, Miller was sent to the Jail for a court appointment. (Docket #1 ¶16.) While waiting in the booking room to be processed, Miller states that he asked Ninkovic if he could have a bag lunch, to which Ninkovic allegedly responded, "Your bitch ass will eat when everyone else do. Now shut your bitch ass up and sit down." (Docket # 1 ¶18.) Miller replied, "I didn't disrespect you, just asked you for something to eat. You don't have to be a bitch about it." (Docket # 1 ¶ 18.) Ninkovic then said, "Wail til I get your little bitch ass upstairs, I'm gonna beat you up. Watch!" (Docket # 1 ¶ 20.)

After Miller was processed, Ninkovic, Townes, Gennrich, Capak, and Spidell escorted Miller to segregation via the elevator. (Docket # 106 ¶5.) While in the elevator, Miller claims Townes ordered him to face the back of the elevator, at which time Ninkovic slammed Miller's head into the wall. (Docket # 1 ¶¶ 23-24.) Miller screamed, "Aaah, that

---

[2] I take the facts from "Defendants' Response to Plaintiff's Statement of Facts," (Docket #106), "Plaintiff's Reply to Defendants' Keltoum and Melinda Proposed Findings of Facts" (Docket #134), and Miller's sworn complaint, which the Seventh Circuit has instructed district courts to construe as an affidavit at the summary judgment stage. *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996). The facts in this section are undisputed unless otherwise indicated.

[3] On September 10, 2015, I granted Miller's motion requesting that then-defendant Jason Mielke be replaced by Jacob Gennrich. (Docket #67.)

hurted! You busted by nose. Why did you do that? You won't get away with this, you're on camera!" (Docket # 1 ¶ 24.) Ninkovic said, "So, dumb fuck! This is the elevator where the camera doesn't work." (Docket # 1 ¶ 24.)

Miller claims they then then took him to the recreation cages, also known as the Dogwalk. (Docket # 106 ¶ 6.) He states that his handcuffs and "rip belt" were removed, at which time Ninkovic allegedly said, "Yeah boys! We about to beat Miller and show this little bitch who's boss around here." (Docket # 1 ¶ 26.) Miller claims that Ninkovic, Townes, Gennrich, Capak, and Spidell tried to provoke him by calling him names, but when that did not work, they surrounded him and began to beat him. (Docket # 1 ¶¶ 27-28.) Ninkovic allegedly slapped Miller in the face "with brute force causing Miller['s] head to snap back." (Docket # 1 ¶ 28.) According to Miller, Ninkovic kneed him in the face while Townes, Gennrich, Capak, and Spidell repeatedly kicked him and snatched his hair out. (*Id.*) Miller states that Ninkovic said, "Yeah bitch! You like to write complaints on me and my co-workers here at the jail, huh? Huh? You're not so tough now bitch." (Docket # 1 ¶ 30.)

Miller claims that Ninkovic, Townes, Gennrich, Capak, and Spidell repeatedly kicked his legs, back, and head; kneed him in the face; and snatched out his hair for approximately five to ten minutes. (Docket # 1 ¶ 31.) They left him locked in the recreation cage, laying in a fetal position, with "scrapes, abrasions, knots, bruises, and blood coming from his nose, mouth, and forehead." (*Id.*)

Miller states that Mizdrak and Ruiz escorted him to his cell. He claims he told them that he had just been beaten and was in need of immediate medical attention. (Docket # 1 ¶ 32.) According to Miller, Mizdrak and Ruiz responded, "Yeah, we know you just got beat

4

by our co-workers! We see your injuries on your face, but so the fuck what! You got what you deserved and we're not giving you any medical attention." (*Id.*)

Miller explains that about three hours later, Andrzejewski, a psychiatric social worker assigned to the Jail, performed a mental health assessment on Miller. (Docket # 106 ¶ 8.) Miller indicates he told her that he was not doing well because he had just been beaten for no reason and his request for medical attention had been denied. (Docket # 1 ¶ 33.) Miller states that Andrzejewski responded, "So! What do you want me to do?" and "Aaah! Stop talking to me about this, I don't care! I'm done talking to you Mr. Miller." (Docket # 1 ¶¶ 34-35.)

Miller claims that at the 9:00 p.m. medication pass, Miller gave a medical slip to Mezraoui complaining about the beating and the resulting injuries. (Docket # 1 ¶ 36.) Mezraoui allegedly said, "You're always complaining. You just got here today, you don't need medical." (*Id.*)

Miller also states that the following day as he was being escorted to court, he reported to Andrykowski and Montano that he had been beaten and he showed them his injuries. (Docket # 1 ¶37.) Miller says that they responded with, "Oh well! There's nothing we can do about it. You probably deserved it." (*Id.*) According to Miller, they too denied his request for medical attention. (*Id.*)

3. *The Defendants' Version of the Events*

Defendants Ninkovic, Townes, Andrykowski, Montano, Capak, Gennrich, Spidell, Ruiz, and Mizdrak state that they did not make any of the statements or engage in any of the actions that Miller attributes to them. (Docket # 133 ¶ 1.) In addition, Mizdrak, Ruiz, Andrykowski, and Montano state that they did not observe any injuries on Miller, Miller

5

did not make statements about being injured, and Miller did not request medical care. (Docket # 133 ¶¶ 2-3.)

Andrzejewski states that on December 5, 2013, she was asked to follow up with Miller, who had just arrived at the Jail and whose booking screening identified as having chronic mental health issues. (Docket # 134 ¶ 11.) She was in Miller's cell from 4:27 p.m. until 4:38 p.m., after which she noted that Miller had told her that he had a mental health diagnosis for which he was taking medication, although he denied being hospitalized for psychiatric reasons or for suicide attempts. (Docket # 134 ¶ 15.) Andrzejewski's notes from her evaluation state that Miller claimed officers "beat him up again." (*Id.*) She observed him to be alert and oriented, although rude and combative. (*Id.*) She did not note any injury to Miller. (*Id.*)

Mezraoui does not remember interacting with Miller on December 5, 2013. (Docket # 134 ¶ 19.)

## DISCUSSION

*1. Retaliation Claim*

To establish that defendants Ninkovic, Townes, Gennrich, Capak, and Spidell violated Miller's First Amendment rights by beating him in retaliation for his filing grievances, Miller must demonstrate that he engaged in activity protected by the First Amendment; that he suffered a deprivation that would deter First Amendment activity; and that the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Miller cannot prevail on summary judgment because he did not establish that he filed any grievances prior to December 2013. In fact, the only grievances that Miller points to in

any of his motion papers are dated *after* the alleged beating. Without showing that he engaged in protected activity *before* the alleged beating, he cannot demonstrate that the alleged misconduct of these defendants was motivated by Miller engaging in activity protected by the First Amendment. In other words, while Miller's sworn statement that he previously filed grievances is sufficient to state a claim against these defendants, it is not sufficient for Miller to prevail on that claim at the summary judgment stage.

In any event, defendants Ninkovic, Townes, Gennrich, Capak, and Spidell deny that they beat Miller or made any of the statements that Miller attributes to them. As such, genuine disputes over material facts exist, so summary judgment on this claim would be improper.

   2. *Excessive Force Claim*

Miller alleges that at the relevant time he was both a convicted prisoner being held on a probation violation and a pretrial detainee pending new charges. Defendants suggest his excessive force claims should be evaluated under both the Eighth and Fourteenth Amendments. Under the Eighth Amendment, the central question in evaluating an excessive force claim is "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of harm." *Fillmore v. Page*, 358 F.3d 496, 503 (7th Cir. 2004) (citations omitted). However, to establish a Fourteenth Amendment claim, Miller "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2472 (2015).

Regardless of the standard, Miller's motion for summary judgment on this claim must be denied. Defendants Ninkovic, Townes, Gennrich, Capak, and Spidell deny ever

7

hitting, striking, assaulting, or injuring Miller in any way. Thus, as with Miller's retaliation claim, there exists a he-said, they-said dispute that cannot be resolved on summary judgment.

### 3. Deliberate Indifference Claim

Miller claims that Andrykowski, Montano, Mezraoui, Andrzejewski, Mizdrak, and Ruiz were deliberately indifferent to his serious medical condition when they refused to provide him medical care for the injuries he says he suffered as a result of the alleged beating. In his complaint, Miller states he suffered "scrapes, abrasions, knots, bruises, [and] blood coming from [his] nose, mouth, and forehead." (Docket # 1 at ¶ 31.)

The Eighth Amendment[4] protects against "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail, Miller must show that a state official acted with the requisite culpable state of mind (deliberate indifference), which is a subjective standard, and he must show that his condition was serious, an objective standard. *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590-91 (7th Cir. 1999).

A medical condition is serious if it has been "diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Guiterrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). In addition, in evaluating the seriousness of a condition, courts may consider whether the condition significantly affects the person's daily activities and whether there is chronic and substantial pain. *Id.*

---

[4] Although the *source* (i.e., the constitutional amendment) of a prisoner's rights differs depending on whether he is a pretrial detainee or a convicted prisoner, the *standard* by which the defendants' alleged misconduct is evaluated is the same because the protections for pretrial detainees are at least as great as the protections available to convicted prisoners. Thus, regardless of Miller's status, I will analyze his claim under Eighth Amendment precedent. *Washington v. LaPorte County Sheriff's Dept.*, 306 F.3d 515, 517 (7th Cir. 2002) (holding "there is little practical difference between the two standards").

The Seventh Circuit has held that minor physical injuries do not rise to the level of an objectively serious medical need. *See Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006). For example, in *Pinkston*, the Seventh Circuit ruled that a split lip and swollen cheek did "not qualify as injuries that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotations and citations omitted). Similarly, in *Davis v. Jones*, it held that "a one-inch laceration to an arrestee's temple, that was neither deep enough or long enough to require stitches, and a scraped elbow did not require prompt medical attention under the Eighth Amendment." 936 F.2d 971, 972-73 (7th Cir. 1991).

However, the injuries alleged by Miller are more extensive than those that the Seventh Circuit has ruled do not require prompt medical attention. Miller claims officers beat him for five to ten minutes, repeatedly kneeing and kicking him in the face and pulling out his hair. He describes knots and bruises in multiple places with blood coming from his nose, mouth, and forehead. While an isolated cut or bruise may not rise to a serious medical condition, those are not the allegations before me.

Defendants Mezraoui and Andrzejewski point to Miller's interaction with Nurse Beyer at Dodge Correctional Institution on December 10, 2013, in support of their argument that no serious medical condition existed. (Docket # 97 at 12.) They note that at that meeting, Miller said he did not require medical attention but only wanted to document his injuries. (*Id.*) At that time, Miller also acknowledged that the only treatment necessary was over-the-counter pain reliever, and he already had that in his cell (in his cell at Dodge; it is unclear whether he had this while at the Jail). (*Id.*) However, this interaction between Nurse Beyer and Miller occurred five days after the alleged incident. By then, Miller's condition was different from his condition in the hours following the alleged incident, when

9

Miller alleges he was bleeding, swollen, and in a lot of pain. Although Miller may not have had a serious medical condition five days after the alleged beating, that does not necessarily establish that he did not have one when he interacted with Mezraoui and Andrzejewski.

Andrykowski, Montano, Mezraoui, Andrzejewski, Mizdrak, and Ruiz also argue that, even if Miller can establish a serious medical condition, he cannot establish that they were deliberately indifferent to that condition. Here, the parties dispute each other's version of events. Miller alleges he asked all of these defendants for help and medical treatment, allegations that each of these defendants denies. In addition, they deny that Miller had any visible injuries and that they made any of the statements that he attributes to them. Mezraoui does not recollect even seeing Miller that day. Again, because I am not permitted to make credibility determinations at the summary judgment stage, I conclude that genuine issues of material fact exist and that summary judgment in favor of either movant on this claim would be inappropriate.

**ORDER**

**THEREFORE**, **IT IS HEREBY ORDERED** that the plaintiff's motion for summary judgment (Docket # 68) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants Mezraoui's and Andrzejewski's motion for summary judgment (Docket # 96) is **DENIED**.

The Clerk of Court's office is directed to contact the parties to schedule a conference call with the parties to discuss next steps.

Dated at Milwaukee, Wisconsin this 13th day of November, 2015.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge